NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2021 VT 24

No. 2019-322

| In re Michael Lewis | Supreme Court |
| --- | --- |
| | On Appeal from Superior Court, Chittenden Unit, Civil Division |
| | January Term, 2021 |

Helen M. Toor, J.

Robert Appel, Charlotte, for Petitioner-Appellant.

Sarah George, Chittenden County State's Attorney, and Pamela Hall Johnson, Deputy State's Attorney, Burlington, for Respondent-Appellee.

PRESENT: Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.

¶ 1. **ROBINSON, J.** Petitioner appeals the trial court's summary judgment denying his petition for post-conviction relief (PCR) from his 2009 convictions and accompanying habitual-offender sentence enhancement. He argues: (1) his plea to the 2005 false-pretenses charge used to support the 2009 habitual-offender enhancement lacked a factual basis; (2) three of his 2009 convictions were invalid because he did not verbally enter a plea; and (3) the PCR court erred in refusing to address some of his claims. We conclude that petitioner waived a potential collateral challenge to use of the 2005 predicate conviction to enhance his 2009 sentence when he pled guilty to the habitual-offender enhancement in 2009; considering the plea colloquy as a whole, the court's failure to elicit a verbal plea contemporaneous with the court's review of three of the 2009 charges does not invalidate his convictions on those charges; and the PCR court did not err

in declining to address additional claims raised by petitioner in argument but omitted from his amended petition. Thus, we affirm.

¶ 2.     In 2009, petitioner pled guilty to several charges, including two charges of involuntary manslaughter and multiple charges of grossly negligent operation of a vehicle with serious bodily injury resulting. The charges all arose from petitioner crashing his passenger-filled car head-on into an oncoming vehicle while driving excessively fast in an attempt to elude police officers. Pursuant to petitioner's plea agreement, the trial court sentenced petitioner as a habitual offender based on four prior felonies dating from 2004 to 2008.

¶ 3.     In 2017, petitioner filed a pro se PCR petition. His amended, counseled PCR petition sought to vacate three of the four predicate felony convictions used to support the 2009 habitual-offender enhancement (escape convictions from 2004 and 2008, and a false-pretenses conviction from 2005) and challenged three of his 2009 convictions on the separate and independent ground that he never verbally pled guilty to those charges in the context of the 2009 plea colloquy.[1]

¶ 4.     Ruling on cross-motions for summary judgment, the PCR court rejected the State's argument that petitioner waived any collateral challenges to the predicate convictions that supported the habitual-offender enhancement when he entered the 2009 guilty plea. The PCR court thus examined the plea colloquies in connection with the three challenged predicate convictions and concluded that the colloquies in the 2004 escape and 2005 false-pretenses convictions complied with Vermont Rule of Criminal Procedure 11(f). However, it determined that the colloquy leading to the 2008 escape conviction was insufficient because the trial court failed to ask anything about the accuracy of the State's allegation. In a separate summary-judgment decision concerning the adequacy of the 2009 plea colloquy relating to the three 2009

---

[1] Whether the amended petition also included ineffective assistance of counsel claims is a contested issue on appeal. We review the procedural history relevant to this question in more depth in ¶¶ 20-25 below.

2

convictions petitioner challenged, the PCR court concluded that Vermont law does not require an express question or statement of guilt and that it was "crystal clear" from petitioner's statements that he was admitting guilt to the three counts at issue. The court noted that petitioner had requested an evidentiary hearing on ineffective-assistance-of-counsel claims, but concluded that the amended petition before the court did not include any such claims. The court thus granted judgment to the State in connection with the 2004 escape conviction, the 2005 false-pretenses conviction, and the challenged 2009 convictions. The court granted petitioner judgment with respect to the 2008 escape conviction and remanded the docket to the criminal division to vacate the conviction and reinstate the charge.

¶ 5. On appeal, petitioner argues that: (1) the plea colloquy leading to the 2005 false-pretenses conviction did not comply with Rule 11(f) because there was an insufficient factual basis for the plea; (2) his 2009 convictions on three of the charges were invalid because he did not verbally enter a guilty plea; and (3) the PCR court erred in refusing to address petitioner's various ineffective-assistance-of-counsel claims relating to his representation in connection with the respective predicate convictions underlying his 2009 habitual-offender enhancement and in connection with his 2009 conviction and sentencing.

¶ 6. We review the trial court's summary-judgment decision without deference, applying the same standard as the trial court. In re Gay, 2019 VT 67, ¶ 7, 211 Vt. 122, 220 A.3d 769. Summary judgment is warranted when there are no issues of material fact, and a party is entitled to judgment as a matter of law. V.R.C.P. 56(a).

I. Challenge to Predicate Conviction

¶ 7. We conclude that when he pled guilty to the habitual-offender enhancement based in part on the 2005 false-pretenses conviction, petitioner waived a collateral challenge to the use of that conviction to support a habitual-offender enhancement to his sentence in connection with

the 2009 charges.[2] Recent decisions of this Court compel this conclusion, and we are unpersuaded by petitioner's critique of those decisions.

¶ 8. In Gay, a petitioner who had pled no contest to an offense with a habitual-offender enhancement subsequently filed a PCR petition challenging the habitual-offender sentence enhancement on the basis that the plea colloquies in connection with the underlying convictions violated Rule 11. 2019 VT 67. We held that by pleading no contest knowingly and voluntarily, the petitioner had expressly waived his right to appeal all nonjurisdictional defects in his charge, including the existence of any underlying convictions that made him eligible for a sentencing enhancement. Id. ¶ 12. Therefore, we concluded that the petitioner had expressly waived his right to collaterally attack the prior proceedings. Id. ¶ 13.

¶ 9. While petitioner's appeal was pending in the case before us, this Court issued a decision in In re Benoit reaffirming the reasoning and holding in Gay that "a defendant may not accept the benefit of a plea bargain, expressly waive the right to collaterally attack a predicate conviction, then attempt to make a collateral attack anyway." 2020 VT 58, ¶ 16, __ Vt. __, 237 A.3d 1243 (citing Gay, 2019 VT 67, ¶ 12). We concluded that, with the State's agreement and the court's approval, a defendant can plead guilty and still preserve a PCR challenge to a predicate conviction "by stating on the record at the change-of-plea hearing an intent to challenge one or more of the convictions through a PCR petition, specifically identifying the convictions they intend to challenge, and stating the bases for the challenges." Id. ¶ 18.

---

[2] Petitioner does not challenge the trial court's determination that the plea colloquy in connection with the 2004 conviction complied with Rule 11, and the State has not cross-appealed to challenge the court's separate judgment that the colloquy leading to the 2008 conviction did not, so we do not address the Rule 11 challenges to the 2004 and 2008 convictions. Petitioner argues that the State is precluded from raising the argument that petitioner waived a collateral challenge to the 2005 conviction on appeal, having failed to file a cross-appeal. The State was not required to file a cross-appeal in this case where it was satisfied with the PCR court's judgment and instead advanced alternate grounds to support the decision below. See Huddleston v. Univ. of Vt., 168 Vt. 249, 255-56, 719 A.2d 415, 419 (1998).

¶ 10.    In petitioner's supplemental briefing in this case, he urges us to revisit our holdings in Gay and Benoit, arguing that a guilty plea does not amount to a knowing and voluntary waiver of collateral challenges to predicate convictions.  See, e.g., State v. Hance, 157 Vt. 222, 224, 596 A.2d 365, 366 (1991) (explaining that defendant can waive constitutional or statutory rights if "waiver is knowing, intelligent, and voluntary").  Petitioner acknowledges that the standard plea colloquy advises defendants that a guilty plea constitutes a waiver of the right to direct appeal, but asserts that it does not put defendants on notice that they will be barred from seeking post-conviction relief.

¶ 11.    If the question before us was whether a defendant who pleads guilty to a charge or enhancement without expressly preserving a PCR challenge to a predicate offense forever waives the right to collaterally challenge the predicate convictions in any context, petitioner's waiver analysis might make sense.  But our holdings in Benoit, and its predecessors, are more limited, and rest on the established principle that when an individual knowingly and voluntarily pleads guilty to a charge, and admits to facts collectively establishing all of the elements of the charge, that guilty plea operates as a waiver of most challenges to the resulting conviction that are based on nonjurisdictional defects in the proceedings.[3]  See, e.g., Gay, 2019 VT 67, ¶ 12; In re Torres, 2004 VT 66, ¶ 9, 177 Vt. 507, 861 A.2d 1055 (mem.).  This waiver applies to a broad range of nonjurisdictional challenges, including even waivable constitutional challenges.  See, e.g., State v. Armstrong, 148 Vt. 344, 345-46, 533 A.2d 1183, 1184 (1987) (holding that defendant waived the

_____

[3] We have recognized that the broad waiver of nonjurisdictional challenges is not a blanket waiver.  See State v. Phillips, 2018 VT 85, ¶ 14 n.7, 208 Vt. 145, 195 A.3d 1099 (noting that "the 'knowing and voluntary' requirement necessarily compels a number of limited exceptions to the general rule that a defendant can waive virtually any nonjurisdictional right"); In re Torres, 2004 VT 66, ¶ 9, 177 Vt. 507, 861 A.2d 1055 (mem.) (citing cases recognizing host of rights that defendants who plead guilty cannot waive, including, among others, right to challenge ineffective assistance of counsel, competency determination, and right against self-incrimination at sentencing); see also Tollett v. Henderson, 411 U.S. 258, 267 (1973) (holding that, although guilty plea waives most claims of error, it does not preclude attack on voluntary and intelligent character of plea itself).

right to challenge allegedly unlawful seizure by voluntarily pleading guilty to DUI charge). We explained in In re Parks that ordinarily criminal defendants can waive important constitutional rights, such as the right to be free from double jeopardy, only by "intentional relinquishment or abandonment" of the right, but in the context of plea agreements, "conscious waiver of every potential defense is not necessarily required, and an intelligent plea in compliance with Rule 11 typically forecloses collateral attack on the plea." 2008 VT 65, ¶ 17, 184 Vt. 110, 956 A.2d 545 (quotation omitted). In short, consistent with established law regarding the effect of a guilty plea, we conclude that by pleading guilty to the habitual-offender enhancement based upon the 2005 conviction, petitioner waived the right to collaterally challenge the habitual-offender enhancement on the basis that the 2005 conviction was not valid.

## II. 2009 Plea Colloquy

¶ 12. Petitioner contends that his 2009 convictions of three charges of grossly negligent operation with serious bodily injury resulting are invalid because he never verbally entered a plea of "guilty" to those charges in the context of his plea colloquy. As set forth more fully below, while a verbal plea of "guilty" on the record is generally an important component of a knowing and voluntary guilty plea, it is not essential if the circumstances compel the conclusion that the defendant pled guilty to the charge and the court accepted it. Reviewing the record in this case in more detail, we conclude that the circumstances clearly compel the conclusion that petitioner pled guilty to the three counts in dispute.

¶ 13. Because a guilty plea waives important constitutional rights, the court must "satisfy itself that the plea is voluntary and made with an understanding of its consequences." In re Hall, 143 Vt. 590, 594, 469 A.2d 756, 758 (1983); see also Boykin v. Alabama, 395 U.S. 238, 244 (1969) (reversing conviction based on guilty plea where record "d[id] not disclose that the defendant voluntarily and understandingly entered his pleas of guilty" (quotation omitted)). To ensure the voluntariness of guilty pleas, Rule 11 requires the court, before accepting a guilty plea,

6

to ensure that a defendant who wants to plead guilty understands a host of specified consequences, and to determine that the plea is voluntary and not the result of force or threats or promises apart from the plea agreement itself. See V.R.Cr.P. 11(c), (d). In addition, before entering judgment, the court must satisfy itself that there is a factual basis for the plea, and that the defendant personally admits to those facts. See In re Stocks, 2014 VT 27, ¶ 14, 196 Vt. 160, 94 A.3d 1143; see also V.R.Cr.P. 11(f). Rule 11 does not prescribe a specific form of colloquy, and it does not explicitly require that a defendant verbally state "I plead guilty" or a similar phrase.

¶ 14. Although courts should elicit an express verbal guilty plea to each count to which a defendant pleads guilty, the failure to do so does not necessarily invalidate the ensuing conviction. In general, "the strongly preferred practice is to specifically inquire of the defendant whether [the defendant] in fact pleads guilty." United States v. Grandia, 18 F.3d 184, 187 (2d Cir. 1994); see also Boykin, 395 U.S. at 243 (explaining that court cannot presume waiver of important federal constitutional rights from a silent record). But courts have held that the absence of a statement that the defendant intends to plead guilty "after each charge is inconsequential where the circumstances compel the conclusion that the defendant did enter a plea of guilty and that the plea was accepted by the judge." Commonwealth v. Tavernier, 922 N.E.2d 166, 173 (Mass. App. Ct. 2010) (quotation omitted); see also Grandia, 18 F.3d at 187 ("[T]he district court's failure to specifically ask the defendant 'How do you plead?' is not necessarily fatal if, as here, it is clear from the facts and circumstances that the defendant intended to plead guilty, affirmatively admitted his guilt, stated that he was entering his plea voluntarily, and fully believed he was pleading guilty."); State v. Holden, 2009-1714, p. 2 (La. 4/9/10); 32 So. 3d 803, 804 (per curiam) (holding that failure of defendant to state "I plead guilty" did not "render an[] otherwise knowing, intelligent, and voluntary guilty plea invalid"); State v. Yancey, 2019-NMSC-018, ¶ 13, 451 P.3d 561 ("[N]o 'talismanic incantation' of the words 'I am guilty' is required in order for a defendant to plead guilty, at least where 'the language used is expressive of the defendant's culpability.' "

(quotation omitted)). We agree that where a plea is otherwise knowing, intelligent, and voluntary, the court's failure to elicit an express verbal guilty plea from the defendant does not invalidate the ensuing conviction when there is no doubt that the defendant intended to plead guilty and understood that they were doing just that.

¶ 15. Applying these principles to the record here, we conclude based on the totality of the circumstances that petitioner clearly and unequivocally pled guilty to the three contested charges, notwithstanding the court's failure to specifically elicit his express verbal plea to those charges during its charge-by-charge review. As a result of petitioner's conduct in driving a car full of passengers, the State charged him with sixteen offenses, as well as a habitual-offender enhancement: two counts of manslaughter, seven counts of grossly negligent operation of a vehicle resulting in death or serious bodily injury, and seven counts of eluding resulting in death or serious bodily injury. Petitioner and the State ultimately entered into a written plea agreement, signed by petitioner, pursuant to which petitioner would plead guilty to two counts of manslaughter and five counts of grossly negligent operation resulting in serious injury, along with the habitual-offender enhancement. The State was to dismiss the remaining charges. The controlling sentence under the written plea agreement was to be twenty-two years to life, to serve.[4]

¶ 16. In reviewing the parties' agreement, the trial court conducted a lengthy plea colloquy with petitioner. At the outset, in response to the court's inquiry, petitioner confirmed that the proposed plea agreement consisted of "pleas" to two counts of manslaughter and five counts of grossly negligent operation of a motor vehicle with serious bodily injury resulting. Throughout the plea colloquy, the court referenced the fact that petitioner had chosen to plead guilty. It advised him of his right to plead not guilty, and explained that by pleading guilty he was giving up his rights to a trial at which the State would have a burden of proving him guilty beyond a reasonable

---

[4] The written plea agreement is silent as to petitioner's actual plea. On the completed Notice of Plea Agreement form, with respect to each charge, there is no circle or other marking by either the plea of "guilty" or the plea of "nolo contendere."

8

doubt on each charge; to remain silent about the charged offenses; to a jury trial where he could put on his own evidence; to counsel in connection with that trial, at State expense if he could not afford counsel; and to appeal. Among other things, petitioner confirmed that it was his choice to plead guilty, that he had discussed it with his attorneys, and that he was satisfied with his legal representation. The State's Attorney recited a factual basis for the charges, describing in detail the events that gave rise to them, identifying each of the seven victims, describing the serious injuries to five of the victims, and stating that the other two had died. Petitioner expressly and verbally agreed that the description was accurate.

¶ 17. The court then reviewed each individual count with petitioner, ensuring that petitioner understood each charge and the sentence he faced in connection with that charge, and eliciting petitioner's agreement that the alleged facts were accurate. In connection with the two manslaughter charges as well as two of the charges for grossly negligent operation resulting in serious bodily injury, the court asked how petitioner would like to plead and petitioner stated "guilty." In connection with three of the grossly-negligent-operation charges (counts 3, 7, and 9), the court did not expressly ask how petitioner wanted to plead. However, in each case, the court read petitioner the charge, ensured that he understood its elements, and confirmed the maximum penalty petitioner faced. In addition, the court reviewed the count-specific facts associated with each of these charges—namely, the identity of and injuries to the specific victim named in the charge—and petitioner orally confirmed the accuracy of the essential factual allegations.

¶ 18. At the end of this count-by-count review of the charges, in response to questions from the court, petitioner specifically acknowledged driving away after an officer pulled him over, driving at least eighty miles per hour, and driving in a grossly negligent way. At that point, the court stated, "I'll accept your plea to all seven charges, find that in each case, the plea is voluntary, made with knowledge and understanding of its consequences after a knowing waiver of your

constitutional rights and that it has a factual basis in the events of October 4th." Petitioner did not object. The court entered a judgment of conviction on each of the seven counts.

¶ 19. The above record leaves no doubt as to petitioner's intent to plead guilty to all counts in the plea agreement, including the three grossly-negligent-operation charges that petitioner challenges in this PCR which were inextricably connected to all other charges. For that reason, we reject petitioner's claim that the court's failure to specifically elicit his express verbal plea to those charges during its count-by-count review invalidates the ensuing convictions.

### III. Ineffective-Assistance-of-Counsel Claim

¶ 20. Petitioner's final argument is that the PCR court erred in failing to allow petitioner to fully litigate all his claims, including various ineffective-assistance-of-counsel claims. On appeal, we review the denial of a motion for relief from judgment under Vermont Rule of Civil Procedure 60(b)(6) for an abuse of discretion. Penland v. Warren, 2018 VT 70, ¶ 6, 208 Vt. 15, 194 A.3d 755. After reviewing the procedural history of petitioner's PCR proceedings in more depth, we conclude that the trial court did not abuse its discretion in declining to address ineffective-assistance-of-counsel claims in its summary-judgment ruling because it correctly concluded that no such claims were raised by the pleadings before it.

¶ 21. In 2017, representing himself, petitioner filed a petition for post-conviction relief seeking to invalidate his 2004, 2005, and 2008 convictions that were predicate convictions for the 2009 habitual-offender enhancement on the ground that in each of those cases, counsel affirmatively misled him concerning the potential for his convictions to be relied upon to support a future habitual-offender enhancement.

¶ 22. PCR counsel entered an appearance on petitioner's behalf and successfully moved to amend the PCR petition. In the motion to amend, petitioner stated that the challenges to the three felony convictions were based on (1) failures to comply with the requirements of Rule 11 in the respective plea colloquies and (2) ineffective assistance of counsel for each conviction.

10

However, the amended PCR petition itself referenced only the Rule 11 plea-colloquy challenges, and did not mention any ineffective-assistance-of-counsel claims. The trial court subsequently granted petitioner's second motion to amend the petition to add the direct challenges to three of the 2009 convictions on the ground that the trial court failed to expressly ask petitioner how he pled. The second amended petition added this additional claim based on failure to comply with Rule 11 in the 2009 plea colloquy. Like the first amended petition, the second amended petition did not reference any ineffective-assistance-of-counsel claims.

¶ 23. Neither of petitioner's two counseled motions for summary judgment referenced any ineffective-assistance-of-counsel claims. In its second summary-judgment ruling, in which the court rejected petitioner's challenges to the three 2009 convictions for the charges to which he did not state, "I plead guilty," the court noted that petitioner, at the end of his reply memorandum relating to the State's motion for summary judgment, had requested an evidentiary hearing on an ineffective-assistance-of-counsel claim. The court concluded that the second amended PCR petition contained no such claim, declined to set an evidentiary hearing, and, having resolved all of the claims in petitioner's pleadings, entered final judgment.

¶ 24. Petitioner moved to reopen the judgment, arguing that the second amended petition filed by petitioner's counsel was not intended to withdraw the first petition in which petitioner clearly alleged a series of ineffective-assistance-of-counsel claims in connection with the predicate convictions. In addition, the motion added new allegations that 2009 trial counsel was ineffective in failing to investigate and challenge the predicate felony convictions supporting the habitual-offender enhancement, and by failing to present any mitigation evidence or call any witnesses on behalf of petitioner at sentencing.

¶ 25. The PCR court concluded that the amended PCR petition superseded the pleading it modified; because the amended petition did not purport to incorporate by reference the ineffective-assistance-of-counsel claims in petitioner's initial pro se complaint, those claims were

11

not before the court. The court did not address the claims, first raised in petitioner's motion for relief from judgment, that 2009 trial counsel was ineffective in various ways.

¶ 26. The trial court acted well within its discretion in declining to address any ineffective assistance of counsel claims. The court correctly recognized that an amended pleading generally supersedes the pleading it modifies. See C. Wright & A. Miller, 6 Fed. Prac. & Proc. Civ. § 1476 (3d ed.) ("Once an amended pleading is interposed, the original pleading no longer performs any function in the case and any subsequent motion made by an opposing party should be directed at the amended pleading." (footnote omitted)); see also Fawzy v. Wauquiez Boats SNC, 873 F.3d 451, 455 (4th Cir. 2017) ("Because a properly filed amended complaint supersedes the original one and becomes the operative complaint in the case, it renders the original complaint of no effect."(quotation omitted)). Nothing in petitioner's amended petition, nor his second amended petition, indicated an intent to incorporate or maintain the ineffective-assistance-of-counsel claims pled in the first uncounseled petition. Moreover, petitioner never pled any ineffective-assistance-of-counsel claims relating to the 2009 conviction; he raised these claims for the first time in his motion to reopen the trial court's final judgment in the case. Under these circumstances, the trial court did not abuse its discretion in declining to address the various unpled claims.[5]

Affirmed.

FOR THE COURT:

_____
Associate Justice

---

[5] Petitioner suggests that because the PCR court refused to allow him to litigate his ineffective-assistance-of-counsel claims he may now be foreclosed from raising those claims in a subsequent PCR petition. Whether a future, hypothetical PCR petition raising these claims would be barred as an abuse of the writ is not before us. Cf. In re Carpenter, 2018 VT 91, ¶ 11, 208 Vt. 291, 197 A.3d 865 (identifying recognized examples of "cause" that may overcome defense of abuse of the writ, including "official interference, situations where a factual or legal basis for a claim was unavailable in an earlier proceeding, or ineffective assistance of counsel.").